IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 01-8726-CIV-FERGUSON/JOHNSON

WILLIAM LABZDA and CAROL JO
LABZDA, Individually, as Parents
and Personal Representatives of the
ESTATE OF MICHAEL LABZDA,
Deceased, and in the Name of
the State of Florida,

          Plaintiffs,

v.

PURDUE PHARMA L.P., PURDUE
PHARMA, INC., THE PURDUE
FREDERICK COMPANY,
ABBOTT LABORATORIES, ABBOTT
LABORATORIES, INC., WALGREEN CO.
d/b/a WALGREENS, FAMILY PHYSICIAN,
P.A., and DENIS DEONARINE, M.D.,

          Defendants.
_____/

NIGHT BOX FILED
MAR 18 2003
CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

## PURDUE DEFENDANTS' RESPONSE IN OPPOSITION
## TO PLAINTIFFS' MOTION TO COMPEL

Defendants Purdue Pharma, L.P., Purdue Pharma Inc., and The Purdue Frederick Company (the "Purdue Defendants") hereby respond to Plaintiffs' Motion to Compel ("Plaintiffs' Motion") as follows.

### INTRODUCTION

This is a narrow case. In this products liability action, Plaintiffs assert that they are entitled to money damages from the Purdue Defendants because their son, Michael Labzda, died after crushing and snorting the Purdue Defendants' pain medication OxyContin® Tablets ("OxyContin") during a drug and drinking binge on February 7 and 8, 2001. Michael Labzda

was a substance abuser who used and abused unlawfully obtained prescription medications as well as alcohol and illegal substances, and had been abusing OxyContin that he bought on "the street" before he ever received a prescription for the medication. When Michael Labzda first received a prescription for OxyContin, he did so by faking an injury so that he could obtain OxyContin and other prescription medications from Dr. Denis Deonarine. There are no allegations or evidence that Michael Labzda obtained OxyContin prescriptions from any doctor other than Dr. Deonarine. Michael Labzda continued to abuse OxyContin as well as other prescription medications, alcohol and various illegal substances until his death. Plaintiffs, the parents of Michael Labzda, allege that the Purdue Defendants are somehow responsible for their son's death because their detail representative, Kim Workman, who made calls on Dr. Deonarine, should have known that Dr. Deonarine was prescribing OxyContin to drug abusers and should have reported Dr. Deonarine to the authorities. As set forth in their Motion to Compel, Plaintiffs' theory of the case is a narrow one:

> [T]he PURDUE PHARMA Defendants abdicated their responsibility as the manufacturer of OxyContin to take necessary steps to prevent the diversion and misuse of the drug OxyContin that was taking place as a result of the actions of Denis Deonarine.

Plaintiffs' Motion to Compel, at p. 3.

## BACKGROUND

The Purdue Defendants market and distribute OxyContin, an effective and highly regulated Schedule II prescription pain medicine. OxyContin is approved by the United States Food and Drug Administration ("FDA") for use in treating patients with moderate to severe pain as indicated on the package insert. The tablets are designed and approved only to be taken whole and by mouth. OxyContin's active ingredient is a synthetic opioid, oxycodone, which has been marketed in the United States since the 1930's. Oxycodone is the opioid found in well-known

pain medications such as Percodan®, Percocet® and Tylox®. OxyContin's unique controlled-release design provides for controlled delivery of oxycodone to the patient's body so that the drug is absorbed into the bloodstream over twelve hours, a comparatively longer period of time than immediate release opioids like Percodan®, Percocet® and Tylox®. Taken properly and as directed by a physician, OxyContin has brought relief to millions of pain patients.

Crushing OxyContin destroys its controlled-release characteristic and allows for the rapid release of a potentially toxic dose of oxycodone. In other words, crushing the medication changes it into something else. Once the controlled-release matrix is destroyed by crushing, the medicine is no longer OxyContin; it is now immediate-release oxycodone. The Purdue Defendants have always warned that OxyContin is not to be crushed. Specifically, the warnings that accompanied OxyContin at the time Michael Labzda procured it stated twice in bold face type:

> **TABLETS ARE TO BE SWALLOWED WHOLE**
>
> ***
>
> **TAKING BROKEN, CHEWED OR CRUSHED OxyContin TABLETS COULD LEAD TO THE RAPID RELEASE AND ABSORPTION OF A POTENTIALLY TOXIC DOSE OF OXYCODONE.**

Further, the warnings instruct physicians to advise their patients that:

> Patients should not combine OxyContin with alcohol or other central nervous system depressants . . . except by the orders of the prescribing physician because additive effects may occur.

Plaintiffs have brought a single claim for negligence against the Purdue Defendants. The warnings of the dangers of misuse associated with OxyContin were adequate, including the warning against doing exactly what Michael Labzda deliberately chose to do. Among other things, the prescription information warns that OxyContin is a Schedule II opioid to be taken for

the management of moderate to severe pain; that it is a potential drug of abuse and that it should not be crushed or taken with alcohol. Michael Labzda purposely crushed and snorted the OxyContin tablets contrary to warnings provided by the Purdue Defendants.

## DOCUMENTS ALREADY PRODUCED

The Purdue Defendants have already produced voluminous documents to Plaintiffs in connection with its Initial Disclosures and in Response to Plaintiffs' First and Second Requests for Production. As part of its Initial Disclosure and subsequent productions, the Purdue Defendants have already made available to Plaintiffs over 32 boxes of documents relating to OxyContin. The documents produced in response to this Initial Disclosure included its New Drug Application ("NDA") and Investigational New Drug Application ("IND") relating to OxyContin and their supplements for the relevant time period,[1] all OxyContin promotional materials for the relevant time period and all OxyContin package inserts for the relevant time period.

Additionally, in response to Plaintiffs' First Request for Production of Documents, the Purdue Defendants have produced in excess of 2,000 pages of various documents relating to Dr. Deonarine, including: all the "call reports"[2] of any detail call by a Purdue representative on Dr. Deonarine; data showing the number of prescriptions for OxyContin and other medications

---

[1] Before OxyContin could be sold commercially in the United States, Purdue as the drug's sponsor had to submit to the FDA the OxyContin NDA and IND. Prior to the launch of OxyContin in late December 1995, Purdue spent years testing the safety and effectiveness of OxyContin with FDA oversight. The OxyContin NDA and IND include a great deal of medical, scientific and historical information about OxyContin and oxycodone, including data from its clinical trials. Since the date that the FDA approved the sale of the medication, Purdue has continued to supplement the NDA and IND with new materials and the results of new clinical trials. Purdue has made material from the relevant time period available to the Plaintiffs.

[2] A "call report" is a short note made by a detail representative following a meeting with a physician. Purdue has over 700 detail representatives who call on multiple physicians each day. There are over 6 million call reports. Kimberly Workman called on Michael Labzda's prescribing physician, Dr. Deonarine, and all of those call notes relating to calls on Dr. Deonarine have already been produced.

4

written by Dr. Deonarine; any letters from Purdue to Dr. Deonarine; expense reports relating to Kim Workman's calls on Dr. Deonarine; and OxyContin advertisements in journals that may have been read by Dr. Deonarine.

In response to Plaintiffs' Second Request for Production of Documents, the Purdue Defendants also produced over 1,100 additional pages of documents, including: the personnel file for Kim Workman; OxyContin literature materials that Ms. Workman may have left for Dr. Deonarine; electronic e-mails for Ms. Workman relating to Dr. Deonarine; and two videotapes and one CD-ROM regarding OxyContin that Dr. Deonarine may have watched.

In addition to requesting the above documents in this Second Request for Production, Plaintiffs have requested that the Purdue Defendants produce additional documents having nothing to do with the theory of the case Plaintiffs articulated in their Motion to Compel. These documents fall under two categories: (1) documents relating to physicians other than Dr. Deonarine, the only physician who prescribed OxyContin for Michael Labzda, and (2) documents relating to information about programs sponsored by Purdue that Michael Labzda never participated in. Plaintiffs' present Motion to Compel relates to these two categories of documents.

## ARGUMENT

**I.    Plaintiffs' Discovery Demands Violate Fed.R.Civ.P. 26(b), As Amended.**

Rule 26(b)'s provisions relating to the scope of discovery were specifically amended in 2000 to place reasonable limits on the discovery process and to address widespread reports of unnecessarily broad and expensive discovery demands. Fed. R. Civ. P. 26(b)(1). Amended Rule 26(b)(1) of the Federal Rules of Civil Procedure permits discovery regarding unprivileged matters relevant to the "claim or defense of any party," narrowing the prior standard allowing

discovery regarding unprivileged matters relating to the "subject matter involved in the action." Fed. R. Civ. P. 26(b)(1).³ Broader "subject matter" discovery is not allowed without a showing of "good cause." Id. Importantly, a court may deny discovery under Rule 26(b)(2) if "the burden or expense of the proposed discovery outweighs its likely benefit."⁴ Under this standard, the documents Plaintiffs seek in their Motion to Compel are clearly beyond the scope of permissible discovery. Below are the Purdue Defendants' responses to the specific requests that are the subject of Plaintiffs' Motion to Compel.

### A. Category 1: Documents Relating to Physicians Other Than Michael Labzda's Prescribing Physician, Dr. Denis Deonarine

#### 1. Request No. 1

In Request No. 1, Plaintiffs seek data regarding prescriptions written by any physician who was called on by Kim Workman. As noted above, the Purdue Defendants have already produced all sales and prescription data, sometimes called PlanTrak or Xponent information, relating to Dr. Denis Deonarine, Michael Labzda's prescribing physician. Also noted above, the Purdue Defendants have made a substantial production of other documents relating to Dr. Deonarine, and Plaintiffs have made no objection to the scope of that production. Data relating

---

³ The committee notes related to the amendment of Rule 26(b)(1) include the following statements: "The amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery;" "The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action;" "The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b) Advisory Committee's Notes.

⁴ 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.41 (3rd ed. 1999 & Supp. 2002) ("The definition restricting "relevant" discoverable evidence to that relating to the claims and defenses the parties have actually articulated . . . is a clarion call for the courts to use their administrative authority to control discovery to eliminate those instances in which the parties stray far afield from the factual issues that are at the heart of their case . . . .").

to other physicians has nothing to do with: (1) Michael Labzda's death, (2) Dr. Deonarine or any of his prescribing practices or (3) Kim Workman's supposed "abdication [of her] responsibility . . . to take necessary steps to prevent the diversion and misuse of the drug OxyContin that was taking place as a result of the actions of Denis Deonarine." Request No. 1 is therefore beyond the scope of permissible discovery under Rule 26(b) and the categories of documents should not be required to be produced.

2.  **Request No. 2**

In Request No. 2, Plaintiffs seek data regarding prescriptions written by any physician who was called on by Catherine Fisher or any other Purdue detail representative who called on Dr. Luyao. Plaintiffs claim that this information is relevant to compare the number of prescriptions written by Dr. Luyao to other doctors who were the subject of marketing efforts by Catherine Fisher to shed further light on Purdue's knowledge of the improper activities of Dr. Luyao. See Plaintiffs' Motion p. 12. Dr. Luyao and Catherine Fisher, the Purdue detail representative that called on Dr. Luyao, have nothing to do with Michael Labzda, his death, Dr. Deonarine or Kim Workman and therefore nothing to do with the claims and defenses in this matter. This data is even further removed from the claims and defenses in this case than the data Plaintiffs seek in Request No. 1, and should not be required to be produced under amended Rule 26(b).

3.  **Requests Nos. 15 and 16**

In these requests, Plaintiffs seek call reports relating to doctors other than Dr. Deonarine. The Purdue Defendants have produced all call reports relating to Dr. Deonarine, the doctor that prescribed OxyContin for Michael Labzda, a total of over 50 reports. In addition, the Purdue Defendants have produced any other call report for any Purdue detail representative where Dr.

Deonarine's name appeared in the report. Call reports, notes or observations relating to other doctors that Kim Workman called on have nothing to do with Dr. Deonarine, Michael Labzda or his death and therefore are unrelated to the claims and defenses in this matter and should not be required to be produced.

Further, not withstanding the Purdue Defendants' objections to Request No. 16 and the fact that such documents are completely unrelated to the claims in this matter, there are no Catherine Fisher call reports that relate to "notes or observations made by Kimberly Workman concerning all physicians other than Denis Deonarine and all pharmacists."

### 4. Request No. 10

In Request No. 10, Plaintiffs also seek production of various documents relating to Dr. Luyao. The only doctor that might possibly be relevant to this matter is Dr. Deonarine, the doctor Michael Labzda obtained OxyContin from. The only Purdue detail representative who might possibly be relevant to this matter is Kim Workman, who called on Dr. Deonarine. Plaintiffs' request for documents related to Dr. Luyao and Catherine Fisher, the Purdue detail representative that called on Dr. Luyao, are completely unrelated to the claims and defenses in this matter and tangential to any issues related to Dr. Deonarine, Kim Workman or Michael Labzda. It is undisputed that Dr. Luyao never prescribed OxyContin to Michael Labzda, that Dr. Luyao was never called on by Kim Workman, that Catherine Fisher never called on Dr. Deonarine and therefore these documents should not be required to be produced.

Additionally, in response to Plaintiffs' claims that it needs information related to Dr. Luyao and Catherine Fisher to support their alleged claim for punitive damages, such information is too far removed and attenuated to the facts at issue in this matter to provide a basis for punitive damages. As stated above, Dr. Luyao never prescribed OxyContin to Michael

Labzda, Kim Workman never called on Dr. Luyao, Catherine Fisher never called on Dr. Deonarine and Michael Labzda never obtained OxyContin from Dr. Luyao.

### 5.     Request No. 14

Finally, in Request No. 14, Plaintiffs seek production of sales information relating to Kim Workman and another Purdue detail representative, Catherine Fisher. The Purdue Defendants already have produced Kim Workman's call reports for Dr. Deonarine, sales of OxyContin attributed to prescriptions by Dr. Deonarine, Ms. Workman's and others' e-mails relating to Dr. Deonarine, and several other categories of documents relating to Dr. Deonarine and Kim Workman. As stated above, the only doctor possibly at issue in this case is Dr. Deonarine, the doctor who prescribed OxyContin for Michael Labzda, and the only Purdue detail representative that is possibly relevant to this matter is Kim Workman, who called on Dr. Deonarine. Documents relating to other random physicians, as well as documents relating to another Purdue detail representative, Ms. Fisher, who did not call on Dr. Deonarine, are unrelated to the claims in this matter and therefore should not be required to be produced.

## B.     Category 2: Information Concerning the IPAP and Patient Starter Programs

### 1.     Request No. 3

Plaintiffs' Request No. 3 seeks information relating to Purdue's Individual Patient Assistance Program (IPAP).[5] It is undisputed that Michael Labzda never took part in the IPAP Program and therefore the IPAP program is a non-issue in this litigation.[6] Records relating to patients not a party to this litigation who sought financial assistance in obtaining OxyContin

---

[5]     Purdue-affiliated companies have an Individual Patient Assistance Program to make available certain of the company's opioid analgesic medicines, including OxyContin, to patients who have been prescribed such medicines by their doctor, and because of their financial situations have applied for and been approved to receive this medication at no charge.

[6]     Had Michael Labzda taken part in this program, the Purdue Defendants would have produced all documents regarding this program as they related to Michael Labzda.

9

through Purdue's IPAP program have no relation to the claims or defenses at issue in this case. Said a different way, Michael Labzda never participated in IPAP and therefore records related to the program are totally irrelevant and unrelated to Michael Labzda or the claims and defenses in this case. They should not be required to be produced.

### 2. Request No. 4

Plaintiffs' Request No. 4 seeks production of documents relating to Purdue's Patient Starter Program.[7] Although Purdue has no records to determine which specific patients have utilized Purdue's Patient Starter Program and therefore cannot produce such documents, there is no evidence that Michael Labzda ever participated in the program. Further, the Purdue Defendants have already produced documents relating to its Patient Starter Program, including all documents relating to Dr. Denis Deonarine's use of the program. Any other documents relating to a program that there is no evidence Michael Labzda ever participated in should not be required to be produced as such documents are unrelated to this case.

### CONCLUSION

For the foregoing reasons, the documents Plaintiffs seek to compel are not relevant to the claims and defenses raised in this action. Accordingly pursuant to Rule 26, Plaintiffs' Motion to Compel should be denied.

---

[7] Purdue's Patient Starter Program was designed to provide a free trial of OxyContin to patients for whom a physician has decided that the medication is appropriate and for whom the physician planned to write a prescription. In this way, the physician and the patient had the benefit of determining, over a short period and without cost to the patient, whether OxyContin was the right medication and whether the patient could tolerate the dosage of OxyContin. No physical samples have ever been provided through the Starter Program for distribution to patients by physicians. Instead, Purdue gave a limited number of cards to its detail representatives, who in turn gave them to physicians. The physician then gave a card to a qualified patient, along with a prescription for OxyContin. When the patient went to the pharmacy, he or she turned in both the prescription and the card.

Dated: March 17, 2003.

                                          Respectfully submitted,

Patricia E. Lowry
Florida Bar No. 332569
John W. Little, III, P.A.
Florida Bar No. 384798
Dori K. Stibolt
Florida Bar No. 0183611
STEEL HECTOR & DAVIS LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401-6198
(561) 650-7200
(561) 655-1509 (facsimile)

Donald I Strauber
Mary T. Yelenick
Matthew Kliegman
CHADBOURNE & PARKE, LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5461
(212) 541-5369 (facsimile)

*Attorneys for The Purdue Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail this 17th day of March, 2003 to:

>Jack Scarola, Esq.
>William B. King, Esq.
>SEARCY DENNEY SCAROLA BARNHART
>   & SHIPLEY, P.A.
>*Attorneys for Plaintiffs*
>2139 Palm Beach Lakes Blvd.
>Post Office Drawer 3626
>West Palm Beach, FL 33402-3626

Dori K. Stibolt

WPB_1998 414568v1