IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 01-8726-CIV-MARRA/SELTZER

WILLIAM LABZDA and CAROL JO
LABZDA, Individually, as Parents
and Personal Representatives of the
ESTATE OF MICHAEL LABZDA,
Deceased, and in the Name of
the State of Florida,

                    Plaintiffs,

v.

PURDUE PHARMA L.P., PURDUE
PHARMA, INC., THE PURDUE
FREDERICK COMPANY,
ABBOTT LABORATORIES, ABBOTT
LABORATORIES, INC., WALGREEN CO.
d/b/a WALGREENS, FAMILY PHYSICIAN,
P.A., and DENIS DEONARINE, M.D.,

                    Defendants.
_____/



## THE PURDUE DEFENDANTS' OBJECTIONS TO
## THE MAGISTRATE'S ORDER GRANTING, IN PART,
## PLAINTIFFS' MOTION TO COMPEL AND MOTION TO STAY

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Rule 4 of the

Magistrate Judge Rules for the Southern District of Florida, Defendants, Purdue Pharma L.P.,

Purdue Pharma Inc. and The Purdue Frederick Company (collectively, "Purdue"), object in part

to the Magistrate Judge's Order of August 5, 2003, which grants, in part, Plaintiffs' Motion to

Compel.  In addition, Purdue respectfully requests that its duty to supplement the discovery

responses ordered by Magistrate Judge Snow be stayed until after a ruling on Purdue's Motion

for Summary Judgment or, at a minimum, until twenty (20) days after the Court rules upon

Purdue's objections.  The grounds for Purdue's objections and for the stay are set forth in the

memorandum of law below.



## BACKGROUND

In July of 2001, Plaintiffs filed this wrongful death action against Purdue, Abbott Laboratories, Inc., Walgreens Co. and Dr. Deonarine.[1]

In this products liability action, Plaintiffs assert that they are entitled to money damages from Purdue because their son, Michael Labzda, died after crushing and snorting OxyContin® Tablets ("OxyContin"). Purdue is the manufacturer of OxyContin, an opioid analgesic approved by the FDA for the treatment of moderate to severe pain as indicated in the Package Insert. On the night and early morning of his death, Michael Labzda reportedly shared five marijuana cigarettes, drank substantial quantities of beer and rum, ingested approximately three generic Xanax® pills and crushed and snorted one and a half to two 80 milligram OxyContin tablets. According to the medical examiner, the cause of Michael Labzda's death was "polydrug toxicity."

Michael Labzda's best friend, Christopher Spears, testified during discovery that Michael Labzda was a regular substance abuser who commonly used and abused unlawfully obtained prescription drugs and other illegal substances. Despite the fact that OxyContin, as a Schedule II medication, is supposed to be available only by a prescription, Michael Labzda illegally bought and sold OxyContin -- as well as other drugs -- before he was ever prescribed OxyContin. On July 17, 2000, Michael Labzda obtained, for the first time, a prescription for OxyContin. On that date, Michael Labzda faked an injury to obtain drugs from Dr. Denis Deonarine. Michael Labzda went to Dr. Deonarine for the sole purpose of obtaining pills, the majority of which he intended to and did sell to others. Michael kept the remainder for himself to abuse and get high.

---

[1]  Purdue is now the sole Defendant in this action.

2

Labzda visited Dr. Deonarine three additional times in 2000 and 2001 to obtain prescriptions for OxyContin and other drugs.[2]

Chris Spears warned Michael Labzda that his abuse and misuse of these drugs could kill him. Despite multiple warnings, in multiple forms, from multiple sources, Michael Labzda purposefully traveled a path of drug and substance abuse that ultimately led to his death.

As Plaintiffs' Complaint now stands, they maintain a single claim for negligence against Purdue. Plaintiffs premise their negligence claim on allegations that Purdue negligently manufactured, marketed, promoted, distributed and/or sold OxyContin; failed to take appropriate measures to adequately warn of incidences of abuse and misuse of OxyContin; misrepresented the appropriate uses of OxyContin; and failed to adequately disclose the safety issues and potential for adverse effects of OxyContin use. Amended Compl. at ¶¶ 9, 14 and 28 [D.E.72].

On December 20, 2002, Plaintiffs served their Request to Produce directed to the Purdue Defendants. See Plts.' Request to Produce. Purdue responded to Plaintiffs' Request to Produce on January 23, 2003. See Purdue's Response to Plts.' Request to Produce. While Purdue agreed to produce documents and information regarding Dr. Deonarine and Ms. Kimberly Workman, the Purdue detail representative who called on Dr. Deonarine, Purdue objected to producing documents and information regarding doctors other than Dr. Deonarine and documents and information regarding Purdue detail representatives other than Ms. Workman.

During the course of discovery, Purdue has produced at least 34 boxes of documents in response to requests. Specifically, Purdue has produced more than 2,000 pages of documents relating to Dr. Deonarine, the prescribing physician for Michael Labzda. Those documents

---

[2] There is no evidence or allegation that Michael Labzda obtained OxyContin from any doctor other than Dr. Deonarine.

include the "call reports" of any Purdue representative who called on Dr. Deonarine; data disclosing the number of prescriptions for OxyContin and other medications written by Dr. Deonarine; any and all letters from Purdue to Dr. Deonarine; expense reports relating to Ms. Workman's calls on Dr. Deonarine; and OxyContin advertisements in journals that may have been reviewed by Dr. Deonarine. Purdue has also produced the personnel file for Ms. Workman; OxyContin literature materials that Ms. Workman may have left for Dr. Deonarine; electronic e-mails for Ms. Workman relating to Dr. Deonarine; and two videotapes and one CD-ROM regarding OxyContin that Dr. Deonarine may have watched. In summary, Purdue has produced responsive documents relating to Dr. Deonarine, the only physician at issue in this case, and Ms. Workman, the only Purdue detail representative at issue in this case.

Because Plaintiffs have failed to establish a recognized basis for a products liability claim under Florida law and they are seeking to impose a legal duty on Purdue not recognized by Florida law, Purdue filed its Motion for Summary Judgment on February 24, 2003. Briefing on Purdue's Motion for Summary Judgment is complete and the Motion is at issue.

At the March 17, 2003 pretrial conference, Purdue's counsel advised the Court that Purdue's Motion for Summary Judgment is potentially dispositive of this action, and requested that the parties not be required to continue with pretrial preparations until after a ruling on Purdue's Motion for Summary Judgment. As a result, the Court set the Motion for hearing on April 3, 2003. The April 3rd hearing was subsequently postponed by the Court.

Because the April 3rd hearing was postponed by the Court, on April 9, 2003, the parties filed a Joint Motion to Stay the Pretrial Preparations. See Parties' Joint Motion to Stay Pre-Trial Preparations [D.E. 165]. The Court entered an Order staying all pre-trial and discovery matters, including any responses by Purdue to any other Motions to Compel by Plaintiffs. See Order,

4

dated July 8, 2003 [D.E. 175].  Plaintiffs have never contended that the documents requested in

Plaintiffs' Motion to Compel are necessary to respond to Purdue's Motion for Summary

Judgment.  Indeed, as discussed below, the documents at issue in Plaintiffs' Motion to Compel

are to be used to demonstrate the breach of a duty that Plaintiffs have yet to establish is

recognized under Florida law.

Prior to the Joint Motion to Stay, Plaintiffs filed their Motion to Compel on February 24,

2003.  See Plts.' Motion to Compel [D.E. 110].  Purdue filed its Response in Opposition to

Plaintiffs' Motion to Compel on March 18, 2003.  See Purdue's Response in Opposition to Plts.'

Motion to Compel [D.E. 137].  Magistrate Judge Snow granted Plaintiffs' Motion to Compel as

to request for production numbers 1, 2, 10, 14, 15 and 16.[3]  Pursuant to Rule 72(a) of the Federal

Rules of Civil Procedure and Rule 4 of the Magistrate Judge Rules for the Southern District of

Florida, Purdue respectfully objects to Magistrate Judge Snow's Order on the basis that it is

contrary to law.

## ARGUMENT

Plaintiffs repeatedly argue in their memorandum in support of their Motion to Compel

that documents regarding physicians and Purdue detail representatives who have no involvement

in this case are necessary to show that Purdue abrogated its alleged duty to police Dr.

Deonarine's prescribing practices.  See Plts.' Memorandum in Support of their Motion to

Compel.  According to Plaintiffs, Purdue had an affirmative duty to report Dr. Deonarine to law

enforcement authorities when it knew, or should have known, that Dr. Deonarine was prescribing

OxyContin or other medications to drug seekers like Michael Labzda.  As clearly shown in

Purdue's Motion for Summary Judgment, Plaintiffs' theory has no basis in Florida law and seeks

---

[3]  Purdue will produce responsive documents to Plaintiffs' request for production number 16.

5

improperly to interject a product manufacturer into the doctor-patient relationship. See Purdue's

Memorandum in Support of its Motion for Summary Judgment [D.E. 107].

Plaintiffs' Motion to Compel seeks documents having nothing to do with Dr. Deonarine,

Kim Workman or Michael Labzda. Instead, Plaintiffs request documents regarding various other

physicians and various other Purdue detail representatives who have no connection to the facts

underlying this action. Discovery of these irrelevant documents at this point in the proceedings

is, at best, premature, and, at worst, a foraging expedition.

## REQUEST FOR PRODUCTION NO. 1

**All compilations of data, including Plantrak data, Scriptrack data, Xponent information, or any other compilation by any other name, including Physician Profiles, for all doctors who were the subject of marketing efforts by Kimberly Workman and Lisa Myers.**

**Response:**

**To the extent that Plaintiffs seek information relating to physicians or health care providers other than those who allegedly prescribed OxyContin to Michael Labzda, Purdue objects on the grounds that the Request seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection and its General Objections (specifically General Objections Nos. 1, 4, 5, 6, 7, 9, and 14), Purdue refers Plaintiffs to the Plantrack data relating to Dr. Denis Deonarine previously produced. (Bates number documents omitted).**

**a.      Data regarding doctors having no relationship to Michael Labzda is irrelevant and the request for such information is not reasonably calculated to lead to the discovery of admissible evidence.**

To the extent Plaintiffs seek data regarding doctors other than Dr. Deonarine, Plaintiffs'

request is not reasonably calculated to lead to the discovery of admissible evidence. There is

absolutely no evidence that Michael Labzda visited doctors other than Dr. Deonarine to obtain

OxyContin. Indeed, to this point, Plaintiffs have never claimed that Michael Labzda obtained

OxyContin from any doctor other than Dr. Deonarine.

6

Instead, Plaintiffs argue that data regarding doctors other than Michael Labzda's prescribing physician, Dr. Deonarine, is relevant to show that Purdue knew, or should have known, of the "inappropriate and illegal prescribing patterns of Dr. Deonarine and tortiously failed to take any action." See Plts.' Memorandum in Support of their Motion to Compel, p. 12. Thus, according to Plaintiffs, the requested data is relevant to show Purdue's breach of a duty to police Dr. Deonarine's prescribing habits.[4]

In order for information to be considered relevant for the purposes of discovery, the party requesting the information must show that the information sought "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). However, the right to discovery is not unlimited. Jones v. Colorcraft Corp., 1983 WL 565 (S.D. Ga. 1983). The rules of discovery are "not a license to become foraging expeditions which require inordinate expense or amount to overly broad and far reaching discovery requests." Id. Discovery may be properly denied where the inquiry lies in a speculative area. Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1326 (Fed. Cir. 1990). As fully briefed in Purdue's Motion for Summary Judgment, under Florida law, Purdue had no duty to police Dr. Deonarine's prescribing practices. See Purdue's Memorandum in Support of its Motion for Summary Judgment [D.E. 107]. As a result, discovery of data relating to a non-existent duty to police doctors' prescribing practices lies within a speculative area, and therefore should be denied. Micro Motion, 894 F.2d at 1326.

---

[4] Court's have the discretion to tailor overbroad or burdensome discovery requests. In this instance, if what Plaintiffs seek is information regarding where Dr. Deonarine ranks for writing OxyContin prescriptions among other area doctors, a more reasonable manner of obtaining this discovery would be through an interrogatory rather than producing data for all doctors irrespective of location, time or type or practice.

Additionally, a response to Plaintiffs' request for production would encompass prescribing data for more than 700 physicians who never saw Michael Labzda, never treated Michael Labzda and never prescribed OxyContin for Michael Labzda.[5]

It should also be noted that the request for <u>all</u> call reports for Lisa Myers apparently arises from a single call report for Dr. Deonarine under the name of Lisa Myers dated January 1998, more than two years prior to Michael Labzda's first appointment with Dr. Deonarine. The call reports for Dr. Deonarine, previously produced, indicate that Ms. Myers called on Dr. Deonarine just once. For Plaintiffs to require Purdue, on the basis of one far removed call report, to produce complicated data compilations regarding any and all doctors who Lisa Myers called on during her entire Purdue career, regardless of location or time, is grossly overreaching. Data involving doctors with different types of medical practices bears no relation or correlation to Dr. Deonarine, and is simply irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

Additionally, in their Memorandum, Plaintiffs claim that they need the requested data compilations for the doctors who Ms. Myers' called on in order to compare the number of prescriptions written by Dr. Deonarine to other physicians in Ms. Workman's territory. <u>See</u> Plts.' Memorandum, p. 12. Ms. Myers, however, was assigned to Purdue's Central Orlando territory and therefore would not have regularly called on doctors in Workman's territory. As a

---

[5] It appears that Plaintiffs are seeking data simply for the sake of data. Plaintiffs' discovery requests data compilations for all doctors that Kim Workman or Lisa Myers called on, without any restrictions. Such data cannot be used as a "comparison" for Dr. Deonarine because Plaintiffs' request necessarily includes doctors in other geographic areas with widely varying types and sizes of medical practices and patient bases, and of course with widely different prescribing habits and preferences.

8

result, Plaintiffs' purported need for "comparison" information has no application to any doctor called upon by Ms. Myers.

**b.     Requiring Purdue to answer this irrelevant and not reasonably calculated Request for Production will impose an extraordinary and unwarranted burden upon Purdue.**

The requirement that discovery be relevant and reasonably calculated to lead to the discover of admissible evidence is not only required by the rules of procedure, but also has tremendous practical and logistical impact on litigants.  Here the burden that will be placed on Purdue by allowing this discovery to proceed will be enormous.  Discovery "shall be limited by the court if it determines that . . . the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(iii) (emphasis added).  In fact the Court is authorized to make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Discovery requests requiring a significant time commitment may be unduly burdensome, even when the requested material is relevant.  See Zullig v. Kansas City Power & Light Co., 1989 WL 46690, at *2 (D. Kan., Apr. 17, 1989) (denying motion to compel response to request seeking vast array of accident reports because responding party would need one week to collect responsive materials).  Unreasonable cost also warrants a narrowing of discovery requests.  See Isaac v. Shell Oil Co., 83 F.R.D. 428, 430-32 (E.D. Mich. 1979) (denying discovery pursuant to subpoena despite potential of request to lead to discovery of admissible evidence because compliance with request would cost $50,000).

9

Here, the burden of responding to Plaintiffs' discovery requests would be inordinate. A response to Plaintiffs' request for production would encompass prescribing data for more than 700 physicians who never saw Michael Labzda, never treated Michael Labzda and never prescribed OxyContin for Michael Labzda. Ms. Workman personally called on approximately 466 doctors during her career as a Purdue detail representative. Further, Lisa Myers called on an additional 250 doctors. The research and document collection necessary for producing just the Plantrak data for only <u>one</u> doctor may take a number of days. Accordingly, the production of just the Plantrak data for all doctors called upon by Ms. Workman and Ms. Myers would likely be extremely labor-intensive work that would consume major resources of Purdue and its counsel.

No request justifies such a commitment of time and money, let alone one deliberately seeking irrelevant information. This discovery request is precisely the type the federal discovery rules were intended to prevent. Plaintiffs should not be permitted to go on this unlimited foraging expedition in search of data involving hundreds of doctors who have no relationship to the facts in this case. There can be no dispute that Plaintiffs' request for data regarding hundreds of doctors -- none of which prescribed OxyContin to Michael Labzda -- lies within a speculative area and therefore should not be required.

<b>c.　<u>Plaintiffs' claim that Purdue had a duty to "police" Dr. Deonarine's prescribing practices is the subject of Purdue's Motion for Summary Judgment and therefore discovery on that issue should not be permitted at this time.</u></b>

Alternatively, should the Court find that this data pertaining to doctors who did not prescribe OxyContin to Michael Labzda is calculated to lead to the discovery of admissible

10

evidence, Purdue should not be compelled to produce the documents or provide the data at this time.

On February 24, 2003, Purdue filed its Motion for Summary Judgment addressing Plaintiffs' attempt to expand Florida's product liability law by alleging a duty on the part of Purdue to police the prescribing practices of Dr. Deonarine. As explained in Purdue's Motion for Summary Judgment, Florida law does not impose such a duty on a pharmaceutical drug manufacturer. See Purdue's Memorandum in Support of its Motion for Summary Judgment [D.E. 107].

The Eleventh Circuit has held that any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before discovery. Chudasama v. Mazda Motor Corporation, 123 F.3d 1353, 1368 (11th Cir. 1997). In Chudasama, the Court of Appeals stated that when faced with a motion to dismiss a claim for relief that significantly enlarges the scope of discovery, the district court should rule on the motion before entering discovery orders, if at all possible. Chudasama, 123 F.3d at 1368. In Chudasama, the Court of Appeals noted that the fraud claim at issue in the defendant's motion to dismiss was dubious, and indicated that it was unlikely that Georgia law would recognize such a claim. Id. at 1369. As a result, the Court of Appeals concluded that the fraud claim was sufficiently tenuous to require the District Court to rule on the defendant's motion to dismiss before entering an order compelling production. Id.

Similarly, in this matter, the Court should not permit this attenuated discovery to proceed in the face of Purdue's Motion for Summary Judgment placing at issue the viability of Plaintiffs' claim that Purdue had a duty to police the activities of Dr. Deonarine. As the Court of Appeals in Chudasama stated: "[i]f the district court dismisses a nonmeritorious claim before discovery . . . unnecessary costs to the litigants and to the court system can be avoided." Id. at 1368.

11

The holding and rationale in <u>Chudasama</u> are on point.  Purdue has filed a Motion for Summary Judgment on the grounds that Florida law does not impose a duty on Purdue to police doctors' prescribing practices.  <u>Id.</u>  By their own words, Plaintiffs admit these far reaching document requests are necessary to help establish a breach of this alleged duty -- not the existence of the duty, a question which ought to be decided before far flung discovery is ordered.

Purdue maintains that even without the pending Motion for Summary Judgment, Plaintiffs are not entitled to the requested information.  The outstanding Motion for Summary Judgment, however, is yet an additional reason why Plaintiffs should not be entitled to discover information pertaining to doctors who did not prescribe OxyContin to Michael Labzda.

### REQUEST FOR PRODUCTION NO. 2

**All compilations of data, including Plantrack data, Scriptrak data, Xponent information or any other compilations by any other name, including the Physician Profiles, for all doctors who were the subject of marketing efforts by Catherine Fisher or any other representative who marketed Purdue products to Dr. Asuncion Luyao.**

**Response:**

**Purdue objects to this Request for reasons set forth in its General Objections (specifically General Objections Nos. 4, 5, 10 and 12).**

> **a.      Data regarding doctors having no relationship to Michael Labzda is irrelevant and the request for such information is not reasonably calculated to lead to the discovery of admissible evidence.**

Dr. Asuncion Luyao is a doctor who practiced in the Port St. Lucie, Florida area. Catherine Fisher is a Purdue detail representative who called on Dr. Luyao.  Apparently because Dr. Luyao has been arrested by the authorities on charges that relate to her prescription practices, Plaintiffs seek information in this matter regarding Dr. Luyao and Ms. Fisher.  <u>See</u> Plts.' Memorandum in Support of their Motion to Compel, p. 8.  What is clear is that Dr. Luyao never treated Michael Labzda or prescribed OxyContin to Michael Labzda.  Additionally, Ms.

12

Workman never called on Dr. Luyao.  Conversely, Ms. Fisher never called on Dr. Deonarine. Dr. Luyao, Ms. Fisher and any Purdue detail representative who called on Dr. Luyao are wholly unrelated to Michael Labzda.

To the extent Plaintiffs seek documents regarding Dr. Luyao or other doctors detailed by Ms. Fisher or any other Purdue detail representative who visited Dr. Luyao, Plaintiffs' request is not reasonably calculated to lead to the discovery of admissible evidence.  As stated above, there is absolutely no evidence that Michael Labzda ever saw Dr. Luyao, ever received a prescription from Dr. Luyao or ever obtained OxyContin from Dr. Luyao.  Further, there is no evidence that Michael Labzda ever saw any other doctor detailed by Ms. Fisher or any other Purdue detail representative who visited Dr. Luyao.  Indeed, Plaintiffs do not contend that Labzda ever saw or obtained OxyContin from Dr. Luyao or any other doctor detailed by Ms. Fisher or any other Purdue detail representative who visited Dr. Luyao.

Instead, Plaintiffs allege that data regarding Dr. Luyao or any other doctor detailed by Ms. Fisher or any other Purdue detail representative who called on Dr. Luyao, relate to showing a breach of Purdue's duty to police Dr. Luyao's prescribing practices and would "shed further light on Purdue's knowledge of the improper activities of Dr. Luyao." See Plts.' Memorandum, p. 12.  First and foremost, Purdue has no duty under Florida law to police doctors' prescribing habits.  Further, Dr. Luyao has nothing to do with this case.  Any information, fact or document relating to Dr. Luyao is therefore irrelevant to the claims in this matter -- which involves one doctor only, Dr. Deonarine.  Data relating to Purdue's unrecognized and non-existent duty to police doctors' prescribing practices lies within a speculative area and therefore should be denied.  Micro Motion, 894 F.2d at 1326.

13

Moreover, a response to this request for production would include detailed data compilations for over 1,300 doctors who have no relation to this matter. During Ms. Fisher's career at Purdue, she transferred from Purdue's Wilmington District in Delaware into its Orlando District in Central Florida. As a result, this request for data would encompass information for doctors located in Delaware. Additionally, the other Purdue detail representative who called on Dr. Luyao transferred from Purdue's Orlando District to the Lone Star District in Texas. Accordingly, this request for data would include doctors located in Texas. This data will not advance Plaintiffs' claim and will not lead to the discovery of admissible evidence with regard to their claim.

As with the documents requested by Plaintiffs in Request No. 1, the burden of responding to Plaintiffs' request for data regarding doctors who were called on by Catherine Fisher or any other representative who called on Dr. Luyao is clearly excessive. A response to Plaintiffs' request for production would encompass prescribing data for more than 1,300 physicians in several states, none of whom ever saw, treated or prescribed OxyContin for Michael Labzda. Ms. Fisher personally called on approximately 447 doctors, while the other Purdue detail representative who on called on Dr. Luyao also called on approximately 898 other physicians. Accordingly, the production of the Plantrak data for all doctors called upon by Ms. Fisher and the other Purdue sales representative would be extremely labor-intensive work that would consume major resources of Purdue and its counsel.[6]

---

[6] For this same reason, any argument by Plaintiffs that they need this discovery for purposes of a punitive damages claim, is unavailing. Apart from the fact that there is no basis for such a claim, until the Court rules on the existence of the alleged duty to police, any punitive damages discovery is necessarily premature, as is discovery regarding the credibility of Ms. Fisher or Ms. Workman as it relates to testimony regarding Dr. Luyao.

14

Because this information is wholly irrelevant and encompasses data relating to doctors in a number of states, with no connection to Michael Labzda, Kimberly Workman or Dr. Denis Deonarine, the time and money necessary to respond to the request is clearly unjustified. This Court should not allow Plaintiffs to undertake such an unlimited foraging expedition for data involving hundreds of doctors who have no relationship to the facts in this case.

### b.   Plaintiffs' claim that Purdue had a duty to "police" doctors' prescribing practices is the subject of Purdue's Motion for Summary Judgment and therefore discovery on that issue should not be permitted at this time.

Alternatively, should the Court find that this data pertaining to doctors who did not prescribe OxyContin to Michael Labzda is calculated to lead to the discovery of admissible evidence, Purdue should not be compelled to produce the documents or provide the data until after a ruling on Purdue's Motion for Summary Judgment. See Chudasama, 123 F.3d at 1366.

### REQUEST FOR PRODUCTION NUMBER 10.

**All documents which relate to any concerns or issues concerning Dr. Ascucion Luyao, the activities of Dr. Asuncion Luyao or any members of her staff, or which relate to concerns over the welfare of Dr. Asuncion Luyao's patients.**

**Response:**

**Purdue objects to this request for the reasons set forth in its General Objections (specifically General Objections Nos. 4, 5, 10 and 12).**

### a.   Information regarding Dr. Luyao is irrelevant and the request for such information is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs state that they need documents regarding Dr. Luyao to show that "Purdue abrogated its responsibility as a manufacturer of controlled substances by encouraging Dr. Luyao . . . to prescribe OxyContin when it knew, or should have known, that Dr. Luyao was illegally prescribing and diverting OxyContin." See Plts.' Memorandum in Support of their Motion to

Compel, p. 10. As stated above, there is no evidence that Michael Labzda received OxyContin from Dr. Luyao. Dr. Luyao, Dr. Luyao's office and Ms. Fisher have nothing to do with this case. Accordingly, any documents relating to Dr. Luyao will not advance Plaintiffs' negligence claim.

As stated above, Purdue has no duty to police doctors' prescribing practices. Any information relating to Dr. Luyao is therefore irrelevant to the claims in this matter -- which involves only Dr. Deonarine. <u>Micro Motion</u>, 894 F.2d at 1326

Not only is evidence relating to Dr. Luyao not relevant but the production of such evidence would be oppressive and overly burdensome to Purdue, especially taking into account the likely benefit of such information to Plaintiffs' case. To produce this information, Purdue would have to canvass the files and emails of all Purdue employees who could have had any contact with Dr. Luyao for any evidence of such contact. This would be extremely labor-intensive work that would consume major resources of Purdue and its counsel. Any possible benefit that this information would have for Plaintiffs in this case is clearly outweighed by the extraordinary and unwarranted burden it would impose upon Purdue and its counsel.

**b.    Plaintiffs' claim that Purdue had a duty to "police" doctors' prescribing practices is the subject of Purdue's Motion for Summary Judgment and therefore discovery on that issue should not be permitted at this time.**

Alternatively, should the Court find that this information regarding Dr. Luyao -- a doctor with no relationship to Michael Labzda or to the facts underlying this case -- is calculated to lead to the discovery of admissible evidence, Purdue should not be compelled to produce these documents or provide this information until after Purdue's Motion for Summary Judgment is resolved. <u>See</u> <u>Chudasama</u>, 123 F.3d at 1366.

16

## REQUEST FOR PRODUCTION NUMBER 14.

**All documents, charts graphs or other materials utilized at district meetings or otherwise transmitted within the Purdue system which identified the results of marketing efforts by Kimberly Workman and by Catherine Fisher which efforts would include the number of prescriptions issued or the amount of sales relating to Purdue products and the relative positions of the sales representatives within the Purdue system.**

**Response:**

**Purdue objects to this Request to the extent it seeks documents relating to Catherine Fisher, who did not call on Dr. Denis Deonarine, because the documents it seeks are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection and its General Objections (specifically General Objection Nos. 1, 2, 4, 5, 6, 12, 13, and 14), Purdue refers Plaintiffs to the Plantrack data relating to Dr. Denis Deonarine and the Xponent data relating to Dr. Denis Deonarine identified in Response to Request No. 1.**

### a.   Information regarding Ms. Fisher is irrelevant and the request for such information is not reasonably calculated to lead to the discovery of admissible evidence.

Plaintiffs state that they need information regarding Purdue detail representative Ms. Fisher to support their claim that Purdue "failed to take action when necessary" regarding the activities of Dr. Deonarine and Dr. Luyao.  See Plts.' Memorandum in Support of their Motion to Compel, p. 15.  As stated above, Ms. Fisher never called on Michael Labzda's doctor, Dr. Deonarine.  Rather, Ms. Fisher called on Dr. Luyao, a doctor having no contact with Michael Labzda and no connection to the facts in this case.  Moreover, as set forth in Purdue's Motion for Summary Judgment, under Florida law, Purdue had no duty to police Dr. Deonarine or Dr. Luyao's prescribing practices.  As a result, discovery of information or documents relating to Purdue's non-existent duty to police doctors' prescribing practices lies within a speculative area and therefore should be denied.  Micro Motion, 894 F.2d at 1326.

**b.    Plaintiffs' claim that Purdue had a duty to "police" doctors' prescribing practices is the subject of Purdue's Motion for Summary Judgment and therefore discovery on that issue should not be permitted at this time.**

Alternatively, should the Court find that this information regarding Ms. Fisher -- a Purdue detail representative with no connection to Michael Labzda -- is calculated to lead to the discovery of admissible evidence, Purdue should not be compelled to produce these documents or provide this information until after a ruling on Purdue's Motion for Summary Judgment.  See Chudasama, 123 F.3d at 1366.

## REQUEST FOR PRODUCTION NUMBER 15.

**Copies of all call notes of Kimberly Workman relating to notes or observations made by Kimberly Workman concerning all physicians other than Denis Deonarine and all pharmacists.**

**Response:**

**Purdue objects to this Request, which seeks information concerning any detail visit by Kimberly Workman on any physician or pharmacist at any time regarding any product regardless of whether such visit related to Michael Labzda or Michael Labzda's physician or pharmacist, on the grounds that it is overly broad, unduly burdensome, and seeks information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving its General Objections (specifically General Objections 1, 4, 5, 11, 12 and 14), Purdue refers Plaintiffs to the call reports of Kimberly Workman concerning Dr. Denis Deonarine.  (Bates numbered documents omitted.)**

**a.    Information regarding other doctors and pharmacists detailed by Kimberly Workman is irrelevant and the request for such information is not reasonably calculated to lead to the discovery of admissible evidence.**

Plaintiffs claim that they need Ms. Workman's call reports for all doctors other than Dr. Deonarine and all pharmacists to further "enhance the Plaintiffs' claim that Purdue knew or should have known of the dangers presented by Dr. Deonarine's practice."  See Plts.' Memorandum, p. 16.  Again, Plaintiffs purported need for these irrelevant documents is to

18

support their claim that Purdue breached a duty to police doctors who were writing prescriptions for OxyContin, not to establish the existence of the duty itself.

As stated above, Purdue has no duty under Florida law to police doctors' prescribing practices. Moreover, any call reports regarding doctors other than Dr. Deonarine and call reports regarding pharmacists other than those where Michael Labzda filled prescriptions, having nothing to do with Plaintiffs claims, are irrelevant and beyond the scope of discovery.[7] Micro Motion, 894 F.2d at 1326.

> **b.** **Plaintiffs' claim that Purdue had a duty to "police" Dr. Deonarine's prescribing practices is the subject of Purdue's Motion for Summary Judgment and therefore discovery on that issue should not be permitted at this time.**

Alternatively, should the Court find that call reports regarding doctors and pharmacists detailed by Kimberly Workman -- doctors and pharmacists with no relationship to the facts underlying this case -- is calculated to lead to the discovery of admissible evidence, Purdue should not be compelled to produce these documents or provide this information until after Purdue's Motion for Summary Judgment is resolved. See Chudasama, 123 F.3d at 1366.

## STANDARD OF REVIEW

The standard of review for a Magistrate Judge's resolution of a nondispositive matter is subject to the "clearly erroneous or contrary to law" standards. See 28 U.S.C. § 636(b)(a)(A); Fed. R. Civ. P. 72(a). Magistrate Judge Snow's determination that the documents pertaining to doctors other than Dr. Deonarine, Purdue detail representatives other than Ms. Workman and pharmacists having no relation to the facts of this case are relevant, is a conclusion of law. See

---

[7] Plaintiffs' claims that such notes are necessary to ensure that all documents relating to Dr. Deonarine have been received or to determine the accuracy of her call notes with regard to Dr. Deonarine is too speculative and attenuated to serve as a basis for compelling production.

19

Resolution Trust Corporation v. Bright, 157 F.R.D. 397, 401 (N.D. Texas 1994).  Conclusions of

law are reviewed under the "contrary to law" standard.  Jochims v.  Isuzu Motors, Ltd., 151

F.R.D. 338, 340 (S.D. Iowa 1993); see also Bryant v.  Hilst, 136 F.R.D. 487, 488 (D. Kan.  1991)

(a Magistrate's decision which involves a legal question is subject to the "contrary to law"

standard).  A finding is contrary to law if the Magistrate Judge has misinterpreted or misapplied

applicable law.  Gunter v.  Ridgewood Energy Corporation, 32 F. Supp. 2d 162 (D.  N.J. 1998).

The data and information concerning doctors other than Dr. Deonarine and Purdue detail

representatives other than Ms. Workman and to pharmacists having no relation to the facts of this

case is not reasonably calculated to lead to the discovery of admissible evidence for the reasons

stated above.  As such, Purdue respectfully submits that the Order granting Plaintiffs' Motion to

Compel with regard to this information is contrary to law.  Furthermore, Purdue respectfully

submits that it is error to allow such discovery to proceed in light of the pending Motion for

Summary Judgment.

WHEREFORE, Purdue respectfully requests that the District Court reverse the Order and

sustain Purdue's objections.  Purdue also requests that Magistrate Judge Snow's ruling be stayed

until after a ruling on Purdue's motion for Summary Judgment or, at a minimum, until twenty

(20) days after a ruling on Purdue's Objections.

20

Respectfully submitted,

Patricia E. Lowry
Florida Bar No. 332569
John W. Little, III, P.A.
Florida Bar No. 384798
Dori K. Stibolt
Florida Bar No. 183611
STEEL HECTOR & DAVIS LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL  33401-6198
(561) 650-7200
(561) 655-1509 (facsimile)

*Attorneys for The Purdue Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. Mail this **20+h** day of August, 2003 to:

> Jack Scarola, Esq.
> William B. King, Esq.
> SEARCY DENNEY SCAROLA BARNHART
>   & SHIPLEY, P.A.
> *Attorneys for Plaintiffs*
> 2139 Palm Beach Lakes Blvd.
> Post Office Drawer 3626
> West Palm Beach, FL 33402-3626

Dori K. Stibolt

WPB_1998 424910v1

21